Matthias, J.
 

 These are proceedings in error from the Public Utilities Commission of Ohio, and they challenge the validity of an order of the commission made upon appeal from a finding and order of the director of highways of the state, wherein the director had found to be reasonably necessary and expedient the elimination of the grade crossing involved in the proceeding, and had directed the complaining railroad companies to co-operate with the department of highways in bringing about the separation of grades at such crossing; the commission, upon review, having made a like finding and order.
 

 The essential portions of the finding and order of the commission are as follows: The general scheme for this separation consists of directing the traffic of United States 21 and state highway No. 211 from Third street to Fifth street, where all of this traffic in and through Dover will be carried over the tracks
 
 *382
 
 of the two railroad companies on a proposed viaduct. Provision is made in Section 1229 of the act to authorize the director of highways to relocate, or cause to be relocated, any portion of a road or highway of the state highway system for the purpose of securing the elimination of grade crossings, and, pursuant to this provision, Third street west of the tracks of the Pennsylvania Railroad Company is to be closed and abandoned. It is a fact that, although the through traffic will be diverted from Third to Fifth street in Dover, it will be necessary to retain Third street east of the railroad tracks for ingress to and egress from the depot of the Baltimore
 
 &
 
 Ohio Railroad Company and the wagon tracks of the railroads. We note, however, that the reservation of a part of Third street is solely and wholly for the convenience of the railroad companies.
 

 The commission specifically found:
 

 “That the public way or highway here involved, is, as an extension, an actual part of State Highway (Inter-county Highway) No. 409 of the state of Ohio, at the point where it, designated as Fifth street, crosses the tracks of The Pennsylvania Railroad Company and The Baltimore and Ohio Railroad Company in Dover, Tuscarawas county, Ohio, and that the elimination of said grade crossing is reasonably necessary and expedient.”
 

 The principal question presented in this error proceeding arises from the fact that, instead of separating the grade of the railroads and the highway at an existing grade crossing, it is proposed to extend the highway and effect such crossing at another point. The railroad companies contend that such authority is not vested in the director of highways. The
 
 *383
 
 authority of the director of highways relative to the elimination of grade crossings is conferred by the following provisions of the General Code:
 

 Section 1229: “For the purpose of eliminating one or more existing grade crossings on any road or highway on the state highway system, or on any extension thereof, the director may relocate, or cause to be relocated, any portion of a road or highway on the state highway system, or any portion of any extension thereof; or the director may raise or lower, or cause to be raised or lowered the grade of any road or highway on the state highway system or of any extension thereof, above or below the existing tracks of a railroad, or railroads and parallel and adjacent internrban railroads and may require any company owning, operating, managing or controlling a railroad and any company owning, operating, managing or controlling an internrban railroad parallel and adjacent to such railroad to raise or lower the grade of its tracks above or below the grade of any highway on the state highway system or on any extension of the state highway system, and may construct ways or crossings for such highway, or for such extension, above the tracks of any railroad or railroads and parallel and adjacent interurban railroads, or require such company or companies owning, operating, controlling or managing any railroad or any such railroad and any such parallel and adjacent internrban railroad to construct ways or crossings for such highway or for such extension to be passed under its tracks whenever in the opinion of the director the raising or lowering of any such railroad or railroads and parallel and adjacent internrban railroad tracks or the raising or low
 
 *384
 
 ering or construction of such highway, or of such extension, may be necessary, upon the terms and conditions hereinafter set forth in this act.”
 

 Section 1229-1: “When the director deems it necessary in the abolishment of such existing grade crossings to change the location of any road or highway on the state highway system or on any extension of the state highway system such director may relocate such road or highway, or any part thereof, or such extension, or any part thereof, and may vacate the whole or any portion of such road or highway, or of such extension, abandoned by such relocation, and cause the improvements above contemplated to be placed in such relocated road or highway, or such relocated extension,- provided, that in the relocation of any such highway that portion of the abandoned highway within the limits of the right of wiay of such company or companies as are participating in the cost of the improvement shall be vacated, abandoned and closed to the public upon the opening of the relocated portion of the highway, or extension, to the public. ’ ’
 

 Section 1229-2: “The director shall proceed by entering upon his journal a finding and order, setting out full written description of the existing grade crossing which it is proposed to abolish, showing its location, the reasons which tend to make necessary the elimination of the same, the names of the company or companies owning, operating, controlling or managing such railroad, or railroads, or interurban railway or railways, and the manner in which it is contemplated the proposed improvement should be accomplished, and the proposed relocation of the highway or extension if any relocation is to be made.
 
 *385
 
 In such finding and order the director shall fix a time and place for the holding of a hearing as to the necessity and expediency of the proposed improvement and shall serve or cause to be served a copy of such finding and order on such company or companies at least thirty days prior to the time fixed for such hearing. The director may adjourn such hearing from time to time as he may see fit. ’ ’
 

 Section 1229-3: “If upon such hearing being had the director is of the opinion that the proposed improvement is reasonably necessary and expedient, he shall so find and order, and enter his finding and order on the journal of his department.”
 

 It is urged that, under these statutory provisions for the purpose of eliminating an existing grade crossing, the director of highways may do either of two things — he may relocate a road or highways on the state highway system, or he may cause to be raised or lowered the grade of the road above or below the existing railroad tracks. The claim is that his authority is in the alternative, and that he cannot relocate the highway so that it crosses the railroad at a point other than that of the existing grade crossing, and separate the grades at the new location. Though the authority of the director of highways, as well as that of the Public Utilities Commission, is conferred by statute, and they have no power beyond that thus granted, the interpretation of the statute urged is unwarranted. The clear purpose of the statute is to provide an effective method for the elimination of grade crossings. Physical conditions may be such that this may be best accomplished without any change whatever of the location of the road or highway. There are no doubt instances
 
 *386
 
 where crossings at grade may be eliminated by a mere change of location of the highway. Indeed, it is a matter of common observation that the same highway and railroad cross more than once within a short distance, and that both crossings could be eliminated by a relocation of the highway. On the other hand, physical conditions at the place of an existing grade crossing may be such as to make exceedingly difficult the separation of grades at that point, but the desired purpose may be accomplished with less difficulty, and consequently less expense, a short distance therefrom by a relocation of the highway. To meet that situation was probably the very purpose designed to be served by the provision authorizing the relocation of the highway. The authority conferred is not merely to shift the grade crossing from one point to another. The very evident purpose of the statute is to provide a means and method of averting the dangers inherent in crossings at grade. An absurd situation would be presented by a requirement that only a change of location of a grade crossing could be made, and an elimination of the crossing at grade at that point could only be effected by a subsequent proceeding. The clear purpose of this statute is to authorize the elimination of grade crossings, even though it be deemed necessary or expedient, in order to best accomplish that end, that the location of the highway be changed and a separation of grades effected at the new location. '
 

 It is further contended that the director has no authority in the premises, for the reason that West Third street at the point of the proposed elimination is not on the state highway system.
 

 
 *387
 
 Throughout these proceedings West Third street in Dover has been designated as an extension of inter-county highway No. 409, and has also been referred to as state route 211. The record discloses that upon the map prepared by the state highway department, as provided in Section 1189, General Code, West Third street has been so designated, and the assumption that it was a part of the state highway system was not in any manner challenged. Section 1229-15, General Code, provides for the participation of a municipality in such improvement, and action providing therefor has been taken by the city of Dover.
 

 It is urged that the record fails to disclose a necessity for the elimination of the grade crossing either at that point or the point of relocation of the highway. It is quite obvious that the improvement of state route No. 211 would take a large amount of traffic over Third street if the conditions there wiere not so uninviting to the traveling public as to practically force much of that traffic to a different course, over which, however, such traffic is required to cross the tracks of said railroad companies at grade.
 

 The conditions disclosed by the record are such as to demand relief, and the method proposed was regarded by the director of highways as the most practical plan to provide such relief. The necessity for the separation of grades might have been demonstrated by improving the highway through West Third street, and thus in a measure averting the detouring of traffic which naturally would pass that way, but has avoided that course by reason of the condition thereof in addition to the hazards of the grade crossing. The record shows an average of
 
 *388
 
 ninety train movements across Third street in a fifteen-hour period, and, notwithstanding the adverse condition, an average of 441 vehicles cross these tracks in the same period of time.
 

 It appears not only expedient and practicable, but also sensible, to extend inter-county highway No. 409 to Fifth street, and there separate the grades of the highway and railroads, and abandon the highway, or the portion thereof within the rights of way of said railroad companies, at Third street. The proceeding was not invalidated by reason of the finding and order of the commission that for the convenience of the railroads the portion of Third street east of the railroad tracks should be retained in existence, but should be no longer comprised in the state highway system.
 

 There being no substantial error in the proceeding, and the finding and order of the Public Utilities Commission being neither unreasonable nor unlawful, the same is affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Jones, Dan and Allen, JJ., concur.